**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HOWARD ELECTRIC COMPANY, Respondent.**

No. 88–7107.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 15, 1989.

Decided May 3, 1989.

Joseph A. Oertel, Howard E. Perlstein, and Aileen A. Armstrong, Deputy General Counsel, National Labor Relations Board, Washington, D.C., for the petitioner.

David R. Gorsuch, Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, Colorado, for the respondent.

Before CHAMBERS, BRUNETTI and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

The National Labor Relations Board (the Board) petitions for enforcement of its order against Howard Electric Company (Howard) for violation of §§ 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (3). We grant enforcement of the order.

## FACTS

The case arises through Howard's discharge of Rue Stears, Joe M. Dyer, and Marshall Rapp, electricians in its employ in the building of a power plant on the Snake River in Idaho in 1981–1982.

The project had two general contractors —S.J. Groves Co., which held the prime contract for civil and structural work, and Voest–Alpine, which held the contract for furnishing and installing generator equipment. Howard was the electrical subcontractor to Groves and also agreed to furnish electricians to Voest–Alpine's subcontractor, Eagle Construction Company.

Howard was subject to a collective bargaining agreement between the Eastern Idaho Chapter of the National Electrical Contractors Association and the International Brotherhood of Electrical Workers. The agreement required that on jobs requiring three or more journeymen one would be designated by the employer as a foreman. The agreement also provided that an outside firm doing electrical work within the jurisdiction of the local Idaho union would not be allowed to bring in more than one nonlocal journeyman. The union was the sole and exclusive source of referrals of applicants for employment. The agreement further stated that the handling and moving of any electrical materials, equipment and apparatus should be performed by workmen working pursuant to the collective bargaining agreement.

The union had a right to appoint a steward to "see that the agreement and working conditions are observed." If a workman discovered an alleged violation of the agreement he was to present it to the steward and immediately return to work. The agreement provided for a labor-management committee of three union and three employer representatives to decide by majority vote all grievances that the representatives of the union and employer did not resolve within 48–hours.

Howard, an outside firm within the meaning of the collective bargaining agreement, employed Elmer Bishop as both the project manager and a journeyman. In May 1981 Howard sent Charles White, a nonresident journeyman, to work on the project as a foreman; Howard took the position that his employment was not governed by the collective bargaining agreement. The union did not refer him for employment and objected to his employment as violating both its exclusive right to refer applicants and the provision for only one outside journeyman. On June 2, 1981 the labor-management committee concluded that Howard had violated the referral procedure. Nonetheless, White continued to work on the project.

Rue Stears was hired as an electrician by Howard in June 1981. He became the steward of the union. He protested White's work on the job. In an attempt to meet Stears' objection, Bishop agreed that White would serve merely as a time-keeper and procurer of materials giving no orders. In early February 1982 Stears so informed fifteen electricians in White's presence. On February 18, 1982 Howard transferred Stears to Eagle. On February 19, Eagle said that they did not want him and he was thereupon discharged.

Joe Dyer was hired by Howard in August 1981. Marshall Rapp was hired in September 1981. On January 27, 1982 Rapp was in a manhole feeding electrical wire into a conduit at the other end of which were Dyer and another employee. A boom truck, manned by a member of a different union, arrived at Bishop's direction to pull the wire with the truck. Dyer operated the boom until White intervened. White got on a two-way radio to talk to Bishop, who was in his office. Rapp keyed into the conversation on his radio and managed to disrupt the conversation between White and Bishop. The following day Bishop fired Rapp. Another supervisor told Dyer that White had been angered by Dyer operating the boom truck and that White was going to run Dyer off the job "with the slightest provocation."

A week later, in February 1982, there was a second wire pull and a nonelectrician was assigned to pull the wire. Dyer objected. Bishop told Dyer he could stand by but Dyer feared the union might fine him if he allowed a nonelectrician to pull the wire.

The union steward, Stears, was called to the scene. Stears suggested that on a one-time basis the nonelectrician should be allowed to pull the wire provided that no electrician was required to stand by. The work then proceeded. After this incident White told a company supervisor that if Dyer had a problem, the company had a cure. Dyer was fired on February 18, 1982, the same day that Stears was transferred to Eagle. On February 22 White told Eagle's project manager, "We got three of the hard heads."

## PROCEEDINGS

The General Counsel of the Board brought charges of unfair labor practices against Howard. The case was tried in Idaho on February 28–29, 1983 before David G. Heilbrun, an administrative law judge. Bishop testified that Rapp and Dyer had been unproductive in their work. He testified that he was unhappy with Stears' performance because he caused delays by talking to other employees and because he refused to communicate with White and advised other employees not to take orders from White. Bishop said that the project had been winding down in February 1982 as far as Howard was concerned and so he selected Stears for transfer to Eagle. When Eagle refused to take him, Bishop said he had no alternative but to terminate his employment.

Judge Heilbrun concluded: "Bishop's explanation of why and when the various individuals were released lacks conviction. But neither is it shown by a preponderance of evidence that any conduct rose beyond petty maneuvering to the level of concerted, protected activities." On December 13, 1983 the judge dismissed the General Counsel's complaint. The General Counsel filed exceptions with the Board.

On November 21, 1987 the Board issued its decision and order. The Board held that all three employees were engaged in protected, concerted activities when they questioned the status and authority of White and asserted their right to perform all electrical work. The Board found further that Howard had discharged Stears for seeking enforcement of the collective bargaining agreement in his capacity of steward. The Board found that Bishop had offered shifting defenses for the discharges and that Bishop's reasons were pretextual.

Holding that Howard was in violation of the Act, the Board ordered the reinstatement of Rapp, Dyer and Stears or the offer of equivalent jobs. Howard was also directed to make them whole for any loss of earnings and to remove from its files any references to the unlawful discharges and to notify its employees that it would not discriminate against any of them for activities protected by the Act. The Board seeks enforcement of this order.

## ANALYSIS

■ We will uphold a decision of the Board if its finding of facts are supported by substantial evidence and if it has correctly applied the law. *Whisper Soft Mills, Inc. v. NLRB*, 754 F.2d 1381, 1384–85 (9th Cir.1985). We defer to the Board's reasonable interpretation and application of the National Labor Relations Act. *NLRB v. Island Film Processing Co., Inc.*, 784 F.2d 1446, 1450 (9th Cir.1986).

■ To sustain a charge of an unfair labor practice in a discharge the General Counsel has the burden of showing that conduct of the employee protected by the Act was "a substantial or motivating factor" in the decision to terminate the employee. The employer can defend affirmatively by showing that the termination would have occurred regardless of the protected activity. *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401–03, 103 S.Ct. 2469, 2474–75, 76 L.Ed.2d 667 (1983).

■ Substantial evidence supports the Board's finding that Stears was fired because of his work as a steward and because of his engaging in protected, concerted activity. Howard had created a festering problem with the union by continuing White on the project with apparent supervisory powers after the labor-management committee in June 1981 had determined that White was improperly employed.

Since Howard had not abided by the provisions of the collective bargaining agreement it is in no position to say that Stears was out of line in taking the informal steps that he did to make life difficult for White. Stears was doing his job as a union steward. There was no evidence that he was not doing his job as an electrician. His firing followed within a week his attempt to make effective Bishop's promise that White could not give orders. His discharge was a violation of both sections 8(a)(1) and 8(a)(3).

■■■ The activities of Rapp and Dyer in objecting to the use of nonelectricians to move electrical wire were efforts to make effective the provisions of the collective bargaining agreement that only electricians would move the wire. These activities were also directed against White's exercise of authority in violation of the labor-management committee decision. The activities were "concerted" activities within the meaning of the Act. 29 U.S.C. § 157. Howard's contention that the individual efforts of Rapp and Dyer were not "concerted" has been decisively rejected: the honest and reasonable invocation by a single employee of a right contained in a collective bargaining agreement is a concerted activity within the meaning of the Act. *NLRB v. City Disposal Systems*, 465 U.S. 822, 832, 104 S.Ct. 1505, 1511, 79 L.Ed.2d 839 (1984).

■■■ It is true that in the two incidents involving wire-pulling the objection of Dyer and Rapp was to the jurisdiction of another union and it is as an unfair labor practice for an employee to engage in a "strike or refusal in the course of his employment to ... perform any services ... [for the purpose of] forcing or requiring any employer to assign particular work to employees in a particular labor organization." 29 U.S.C. § 158(b)(4)(D). The Board held that this provision was irrelevant "because the employees did not stop work."

It is a close question whether the Board's finding that Dyer and Rapp did not stop work is supported by substantial evidence. As to Rapp, he did interrupt Bishop's and White's radio conversation but he apparently did not stop working. Dyer, who was operating the boom truck, stopped work when White told him to and apparently did no more than argue with White on this occasion in January and on the later occasion in February. Howard's position in each incident was that the electricians should *not* do the work. Dyer and Rapp are scarcely guilty of a work stoppage. We cannot say that the Board was without substantial evidence for its conclusion that 29 U.S.C. § 158(b)(4)(D) did not apply.

As to the motivation for the firing of Rapp and Dyer there was substantial evidence supporting the Board in the testimony as to White's hostile statements about them and in the timing of the firings in relation to the two wire-pulling incidents and in relation to the firing of Stears. The Board could reasonably conclude that the three electricians who were making an issue of the collective bargaining agreement provisions on electrician's work were all fired by Howard for the same reason: their insistence on the terms of the agreement.

The company did produce evidence that it was dissatisfied with the low production of Rapp and Dyer. But the shifting reasons given by Bishop provided a basis for the Board to treat their low production as pretextual and to conclude that if it had not been for the incidents which angered White, (whose very presence on the project violated the collective bargaining agreement), Rapp and Dyer would not have been discharged.

Accordingly, the Board's order should be enforced.

ENFORCEMENT GRANTED.