**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 77, Respondent.**

**No. 88–7395.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1990.

Decided Feb. 21, 1990.

Howard E. Perlstein and Richard A. Cohen, N.L.R.B., Washington, D.C., for petitioner.

Richard H. Robblee, Hafer, Price, Rinehart & Schwerin, Seattle, Wash., for respondent.

Before BROWNING, BEEZER and RYMER, Circuit Judges.

RYMER, Circuit Judge:

The National Labor Relations Board ("NLRB") petitions for enforcement of its order holding the International Brotherhood of Electrical Workers, Local No. 77 ("Local 77"), in violation of § 8(b)(1)(B) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(b)(1)(B)(1982). Local 77 disciplined two members of the International Brotherhood of Electrical Workers, Local No. 112 ("Local 112") for knowingly and repeatedly doing work that belonged to Local 77, thereby violating Local 77's jurisdiction. The disciplined union members were also foremen for Bruce–Cadet, Inc.

("Bruce–Cadet") Even though Local 77 neither had a collective bargaining relationship with Bruce–Cadet, nor aspired to one, the Board held that Local 77's actions violated § 8(b)(1)(B). We enforce the Board's order.

## I

Bruce–Cadet, an electrical subcontractor on construction projects, is party to a "Site Stabilization Agreement" ("SSA") that governs the terms and conditions of employment for all construction work at the Hanford Nuclear Reservation in the State of Washington. Bruce–Cadet regularly employs members of Local 112 to do electrical work at the Hanford site. Local 112, which has jurisdiction over inside or wireman's work, is also a party to the SSA. Local 77, whose jurisdiction encompasses outside or lineman's work, is not a party to the SSA. Bruce–Cadet does not have, and never has had, a formal collective bargaining relationship with Local 77, nor does it regularly employ members of Local 77.

Jurisdictional problems at the Hanford site developed between Local 77 and Local 112. Local 77 complained that Local 112's members were performing line work for Bruce–Cadet that was within Local 77's jurisdiction. Since Local 77 was not a party to the SSA, there was no formal method to settle a dispute between Bruce–Cadet and Local 77. The SSA, however, contains a non-party jurisdictional dispute procedure: with respect to jurisdictional disputes involving a non-party union, "such disputes shall be referred to the International Unions involved" and the International Unions' "jurisdictional determination shall be implemented immediately by the [employer] involved." Consequently, when the jurisdictional dispute arose concerning the electrical line work for Bruce–Cadet, the dispute was submitted, pursuant to the SSA, to the International Brotherhood of Electrical Workers ("IBEW") for resolution. The IBEW, Local 77 and Local 112 resolved the dispute in an informal agreement: when Bruce–Cadet called for a lineman, members of Local 77 would be dispatched through Local 112's hiring hall.

Under this informal agreement, Local 77's members worked pursuant to the contract between Bruce–Cadet and Local 112. The SSA required Bruce–Cadet to accept this resolution of the jurisdictional problem. Thereafter, Bruce–Cadet obtained linemen from Local 77, through Local 112's hiring hall, "sporadically"—approximately four jobs over a two to three year period.

Dennis Dallas and James Reinkens are members of Local 112 and foremen for Bruce–Cadet. As foremen, they are responsible for handling problems that develop in the field, including resolving trade jurisdictional disputes—determining whether work is lineman or wireman work. They are also permitted, pursuant to the SSA, to work with tools whenever six or fewer electricians (including foremen) are working at a particular job site. Thus, on particular jobs, they function both as supervisors and rank-and-file workers.

On February 2, 1987, Local 77 filed internal union charges against Dallas and Reinkens. Local 77 alleged that Dallas' and Reinkens' personal performance of work within Local 77's jurisdiction violated the constitution of the IBEW. The charges against Dallas and Reinkens stemmed from a dispute concerning line work in certain areas of the Hanford construction site. On May 12, Local 77 tried Dallas and Reinkens in abstentia; both men were found guilty and fined. As a result of the Union's action, Bruce–Cadet filed charges against Local 77 alleging that § 8(b)(1)(B) of the National Labor Relations Act was violated when Local 77 disciplined Dallas and Reinkens. Bruce–Cadet argued that Dallas and Reinkens were disciplined, not for actually performing work outside their local's jurisdiction, but for their role in interpreting the informal agreement between Bruce–Cadet and Local 77 and assigning work to members of Local 112 rather than members of Local 77.

After a hearing, the administrative law judge ("ALJ") found that Local 77 neither had nor sought a collective bargaining relationship with Bruce–Cadet and therefore union discipline of Dallas and Reinkens did not violate § 8(b)(1)(B). The ALJ dismissed

the argument that the referral system, through which Bruce–Cadet secured Local 77 member linemen from Local 112's hiring hall, was a collective bargaining arrangement within the scope of § 8(b)(1)(B). Consequently, since there was no collective bargaining relationship between Local 77 and Bruce–Cadet, the ALJ recommended that the complaint be dismissed.

The NLRB rejected the ALJ's recommendation. First, the Board concluded that the lineman referral arrangement was sufficient to constitute a collective bargaining relationship for § 8(b)(1)(B) purposes. The Board held that it was "unnecessary to determine whether the informal agreement, by itself, would rise to the level of a collective-bargaining agreement enforceable in law, as it is apparent that the parties abided by the informal agreement, as directed to under the Site Stabilization Agreement, and, by doing so, established a collective-bargaining relationship...." Next, the Board found that Dallas' and Reinkens' duties as foremen included interpreting the "informal agreement" between Bruce–Cadet and Local 77 to determine what work was line work within Local 77's jurisdiction. Although the Board noted that Local 77's fines concerned Dallas' and Reinkens' actual performance of line work, the Board concluded that Local 77 fined Dallas and Reinkens to punish them for their performance of a § 8(b)(1)(B) activity—contract interpretation. The Board ordered Local 77 to rescind the fines levied against Dallas and Reinkens and to restore them to membership in good standing. The NLRB filed this application for enforcement on October 3, 1988.

## II

Decisions of the NLRB will be upheld on appeal if substantial evidence supports its findings of fact and if it has correctly applied the law. *NLRB v. Howard Elec. Co.*, 873 F.2d 1287, 1290 (9th Cir.1989). The court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the agency's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986). Under the substantial evidence standard of review, the court of appeals must affirm where there is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir.1987).

The standard of review does not change when an administrative agency disagrees with the hearing officer; rather, the hearing officer's findings become part of the record for review to be weighed against the other evidence supporting the agency. *Laipenieks v. INS*, 750 F.2d 1427, 1429–30 (9th Cir.1985).

## III

Section 8(b)(1)(B) of the Act, 29 U.S.C. § 158(b)(1)(B), makes it an unfair labor practice for a labor organization or its agents "to restrain or coerce ... an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances." The purpose of § 8(b)(1)(B) is "to protect the integrity of the processes of grievance adjustment and collective bargaining—two private dispute-resolution systems on which the national labor laws place a high premium." *NLRB v. IBEW, Local 340*, 481 U.S. 573, 595, 107 S.Ct. 2002, 2015, 95 L.Ed.2d 557 (1987). To determine whether Local 77's discipline of Dallas and Reinkens violated § 8(b)(1)(B) three findings must be made. First, Dallas and Reinkens must have had § 8(b)(1)(B) duties. Second, Local 77's discipline of Dallas and Reinkens must have *adversely affected* their performance of their § 8(b)(1)(B) duties. A nexus must exist between the union discipline and a supervisor's actual performance of a § 8(b)(1)(B) activity. Finally, there must have been a collective bargaining relationship between Local 77 and Bruce–Cadet.

### A. § 8(b)(1)(B) Duties

■ The NLRB found that the duties of Dallas and Reinkens, as foremen, included purchasing material, ordering men from the union hall, handling field disputes

such as straightening out wage questions, dealing with jurisdictional problems, and, in general, handling everything in the field.

■ Jurisdictional problems arose because the informal agreement between Local 77 and Bruce–Cadet did not specifically state who was entitled to do what work. The NLRB held that Dallas and Reinkens had to interpret the agreement to determine whether specific work belonged to Local 77 or Local 112. Contract interpretation is so closely related to collective bargaining that it is considered to be a § 8(b)(1)(B) activity. *See IBEW, Local 340*, 481 U.S. at 586, 107 S.Ct. at 2011. Thus, if Dallas and Reinkens were responsible for interpreting the informal agreement, they had § 8(b)(1)(B) duties.

Local 77 argues that the record does not contain substantial evidence that Dallas and Reinkens made the decision that Local 112's members should perform the work in question. Rather, they argue, both Dallas and Reinkens were acting pursuant to the instructions of Bruce–Cadet's owner, who made the decision that Local 112's members should perform the work. Dallas, Reinkens and the owner of Bruce–Cadet testified that Dallas and Reinkens had full responsibility for running the job sites, including the determination of whether the assigned work required Local 77 electricians. Their testimony, as well as the findings of the ALJ, contradicts the conclusion that Local 77 draws from the evidence. Weighing the evidence that supports and detracts from the NLRB's decision, we conclude there is substantial evidence to support the NLRB's conclusion that Dallas and Reinkens made jurisdictional decisions that determined whether Local 112 or Local 77 should perform specific work. Therefore, Dallas and Reinkens had § 8(b)(1)(B) duties.

## B. Coercion

In *Florida Power & Light Co. v. IBEW, Local 641*, 417 U.S. 790, 804–05, 94 S.Ct. 2737, 2744–45, 41 L.Ed.2d 477 (1974), the Supreme Court held that no § 8(b)(1)(B) violation occurs unless the disciplined conduct adversely affects the performance of his or her § 8(b)(1)(B) duties. The *adverse-effect* test has a limited scope:

> The Court's use of the word 'engaged' implies that for a union to violate section 8(b)(1)(B) a supervisor must be disciplined for actually engaging in grievance adjustment, collective bargaining, or related activities. A mere theoretical connection to those duties—a potential fear of the union by the supervisor-member or the lack of undivided loyalty to the employer caused by the supervisor-member's honoring of the picket line—is too remote to cause a section 8(b)(1)(B) violation. *In the Court's view it would appear that a violation of the section will occur only when the supervisor is disciplined while he or she is actually performing one of the protected activities.*

*IBEW, Local 340*, 481 U.S. at 582 n. 5, 107 S.Ct. at 2008 n. 5 (quoting Comment, *Section 8(b)(1)(B), National Labor Relations Act: When Does Union Discipline of Supervisor–Members Constitute Restraint or Coercion of the Selection of Employer Representatives?*, 1976 Wis.L.Rev. 866, 882–83) (emphasis added).

■ In applying the adverse-effect test, two distinct lines of authority have developed. First, there is no violation when a supervisor, who may generally possess § 8(b)(1)(B) duties, is disciplined for his actions when he or she is not actually engaged in a § 8(b)(1)(B) activity. *Florida Power* illustrates this rule. In *Florida Power*, the supervisor-members crossed picket lines to engage in rank-and-file struck work. The union initiated disciplinary proceedings against the supervisors because they performed rank-and-file work during a strike. The Supreme Court held that the connection between the union discipline of the supervisors and the supervisors' performance of their § 8(b)(1)(B) duties was too attenuated to constitute a § 8(b)(1)(B) violation. *Florida Power*, 417 U.S. at 804–05, 94 S.Ct. at 2744–45. In other words, there was no reason for the supervisors to alter the way they performed their § 8(b)(1)(B) duties as a result of the fine. The fine only adversely affect-

ed the supervisor's performance of struck rank-and-file work.

Second, there is a violation when a supervisor is disciplined for his or her actions while he or she is engaged in § 8(b)(1)(B) activity. *American Broadcasting Cos. v. Writers Guild,* 437 U.S. 411, 98 S.Ct. 2423, 57 L.Ed.2d 313 (1978), illustrates this rule. In *American Broadcasting,* the supervisor-members crossed picket lines to perform their regular supervisory duties, which included the adjustment of grievances. *Id.* at 431–32, 98 S.Ct. at 2434–35. The Court held union discipline of member-supervisors for performing their § 8(b)(1)(B) functions during a strike affected the manner they fulfilled those functions, impermissibly coercing the employer's choice of representatives in violation of § 8(b)(1)(B). *Id.* at 432–36, 98 S.Ct. at 2435–37. The actual charges lodged against Dallas and Reinkens were that they "did knowingly and repeatedly do work that belonged to Local # 77," thus causing "economic harm to [its] members." The stated purpose of the union's discipline was a complaint that the two men were *personally performing* line work outside of their union's jurisdiction. This purpose, standing alone, is legitimate and falls under the *Florida Power* rule. However, as the Board found "[t]he Respondent's assertion that Dallas and Reinkens were fined only for doing work belonging to the respondent ignores the context in which the discipline was imposed."

The NLRB found that Dallas and Reinkens would not have performed the rank-and-file work had they exercised their § 8(b)(1)(B) duties differently. Unlike *Florida Power,* where the performance of the rank-and-file work was not conditioned

on the exercise of a § 8(b)(1)(B) duty, Dallas' and Reinkens' performance of rank-and-file work was intertwined with their § 8(b)(1)(B) duties.[1] The effect of union discipline is to restrain Dallas and Reinkens from giving work to members of Local 112, including themselves in appropriate situations. Therefore, the Local 77's discipline of Dallas and Reinkens violates § 8(b)(1)(B).[2]

## C. Collective–Bargaining Relationship

In *IBEW, Local 340,* the Supreme Court held that the absence of a collective bargaining relationship between the employer and the union, and the fact that the union did not seek to represent the employer's workers in the future, made the possibility that the union's discipline of the employer's supervisors would coerce the employers too attenuated to form the basis of an unfair labor practice charge. 481 U.S. at 589, 107 S.Ct. at 2012. "Section 8(b)(1)(B) was primarily intended to prevent a union engaged in a *long-term relationship* with an employer from dictating the latter's choice of representative or the form that representation would take." *Id.* at 591, 107 S.Ct. at 2013 (emphasis added). Local 77 has not had a long-term or any relationship with Bruce–Cadet, except for the sporadic use of the informal agreement. Further, the only time that Local 77 asked Bruce–Cadet to sign a labor agreement occurred "a couple of years ago." These facts weigh against the finding that Local 77 and Bruce–Cadet had a collective-bargaining relationship or aspired to such a relationship. And, in fact, the ALJ found that this requirement was not satisfied.

However, in *IBEW, Local 340* there was *no* relationship between the union and the

1. This fact distinguishes both *Rasmussen v. NLRB,* 875 F.2d 1390 (9th Cir.1989), and *Chicago Typographical Union No. 16,* 216 N.L.R.B. 903 (1975), *enforced,* 539 F.2d 242 (D.C.Cir.1976), *cert. denied,* 438 U.S. 914, 98 S.Ct. 3142, 57 L.Ed.2d 1159 (1978). In both of those cases, the supervisor-members who crossed picket lines performed both supervisory duties as well as rank-and-file work. However, performance of the rank-and-file work was not conditioned on the supervisor-member's exercise of a § 8(b)(1)(B) duty.

2. It cannot be argued that the effect of the Union discipline in this case was solely to restrain Dallas and Reinkens from personally doing rank-and-file line work. To avoid similar fines in the future, for themselves or for members of their Local 112, Dallas and Reinkens would have to contact Local 77 members whenever line work arguably fell within Local 77's jurisdiction. Consequently, the union discipline affects the performance of both their line work and their § 8(b)(1)(B) duties, thereby violating § 8(b)(1)(B).

employer. Thus the potential for § 8(b)(1)(B) type abuse was not present.[3] In this case, there is a relationship between Local 77 and Bruce–Cadet. Local 77 has a continuing interest in the manner Dallas and Reinkens perform their duties. Dallas' and Reinkens' decisions determine the amount of work within Local 77's jurisdiction and thus the number of times Local 77's members will be used on a job. Local 77 has an incentive to influence Dallas' and Reinkens' handling of their contract interpretation duties. *See IBEW, Local 340,* 481 U.S. at 590, 107 S.Ct. at 2012–13. Moreover, Local 77's discipline of Dallas and Reinkens "might adversely affect the future performance of those duties." *Id.* Although Local 77's and Bruce–Cadet's relationship is sporadic, it contains the necessary ingredients for § 8(b)(1)(B) abuse. For these reasons, we conclude a collective bargaining relationship existed between Bruce–Cadet and Local 77, for purposes of § 8(b)(1)(B).[4]

### CONCLUSION

There is substantial evidence to support the NLRB's finding that Local 77's discipline of Dallas and Reinkens violated § 8(b)(1)(B) of the National Labor Relations Act. First, the record supports the NLRB's finding that Dallas and Reinkens had to interpret the informal agreement between Bruce–Cadet and Local 77 to determine whether specific work belonged to Local 77 or Local 112. Second, because Dallas' and Reinkens' performance of rank-and-file work is intertwined with their § 8(b)(1)(B) duties, Local 77's discipline of Dallas and Reinkens for performing work

within Local 77's jurisdiction adversely affected their conduct in performing their § 8(b)(1)(B) duties. Finally, because the sporadic relationship between Bruce–Cadet and Local 77 contains the potential for the type of abuse § 8(b)(1)(B) was designed to prevent, for purposes of § 8(b)(1)(B), a collective bargaining relationship between Bruce–Cadet and Local 77 exists. Therefore, we enforce the NLRB's order.

---

**3.** "The union [had] nothing to gain by interference with the supervisor-member's loyalty during grievance adjustment or collective bargaining; nor can the employer-representative reasonably expect that he or she will be subject to discipline for the *manner* in which those duties are performed in the future." *IBEW, Local 340,* 481 U.S. at 590, 107 S.Ct. at 2012 (emphasis in original).

**4.** Subsequent to its decision in this case, the NLRB has adopted what it characterizes as a restrictive interpretation of the collective-bargaining relationship requirement. Where the union does not have a collective-bargaining rela-

tionship with the employer, it is not sufficient that the union might seek to establish a collective-bargaining relationship sometime in the unspecified future. "There must be evidence not only of an actual intent to seek recognition, but the union must currently be seeking recognition." *Miami Valley Carpenters District Council of Dayton Ohio,* 296 N.L.R.B. No. 67 (1989). For the reasons stated above, specifically the continuing relationship between Bruce–Cadet and Local 77 embodied in the SSA and the informal agreement, we hold that a collective-bargaining relationship for § 8(b)(1)(B) purposes exists and the limitation set forth in *Miami Valley* does not apply.