46 F.3d 1143
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
IRONWORKERS LOCAL 433, affiliated with International
Association of Bridge, Structural and Ornamental
Workers, AFL-CIO; District Council of
Ironworkers of State of
California, Respondents.
 No. 93-70053.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: May 11, 1994.*
Decided: Jan. 12, 1995.
 
 Before: CHOY, POOLE, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The National Labor Relations Board applies for enforcement of its order against Iron Workers Local 433 and the District Council of Iron Workers of the State of California and Vicinity.[1] The application for enforcement is granted.
 
 
 3
 * This case involves a dispute that Local 433 had with Dover Elevator Company's and Otis Elevator Company's use of non-Local 433 employees to install elevator fronts at three job sites, one in Las Vegas and two in Los Angeles. Elevator fronts are the part of the elevator affixed to the building on each floor, i.e., the door frame and sill. Dover and Otis used their own employees, who were represented by the International Union of Elevator Constructors, Local 18, to install the elevators. They had no collective bargaining agreement with the iron workers represented by Local 433. Local 433 picketed the three sites and concedes that it picketed in an attempt to force Dover and Otis to reassign the installation of the elevator fronts (but not the rest of the elevators) from elevator constructors to iron workers.
 
 
 4
 In response to the picketing, Dover, Otis, and the general contractor filed unfair labor practice charges against Local 433.
 
 
 5
 After the charges were filed, Local 433 requested that the California Iron Workers Board of Adjustment resolve its dispute against Otis regarding the Los Angeles projects. The Board of Adjustment was created under a multiemployer contract, the California Iron Workers Agreement, to resolve contract disputes. Parties to the contract include Local 433, the District Council, other unions, and an employer association, the California Ironworkers Employers Council. Local 433 sought wages and benefits under a section of the contract providing that employers who are parties to the contract must hire employees whose work is covered by the contract through an Iron Workers' hiring hall.
 
 
 6
 Subsequently, the NLRB hearing officer held a section 10(k) hearing on the unfair labor practice charges. Before the NLRB issued its decision, the state Board of Adjustment held a hearing on Local 433's grievances against Otis, concluded that Otis had violated the iron workers contract, and ordered Otis to pay the top people on Local 433's out-of-work list for all hours they could have worked on the jobs.
 
 
 7
 Several months later, the NLRB issued its 10(k) decision, finding that Local 433 had engaged in an unfair labor practice, awarding the disputed work to the employees represented by the Elevator Constructors Union, and directing Local 433 to notify it within 10 days whether it would refrain from trying to force the contractors to assign the elevator front installation "in a manner inconsistent with th[e NLRB's] determination."
 
 
 8
 One month later, the Iron Workers District Council, on its own behalf and on the behalf of Local 433, filed a petition in state court to enforce the state Board of Adjustment's arbitration award. Otis removed the action to federal court, and Local 433 filed a cross-petition seeking enforcement of the award. The Regional Director then issued an unfair labor practice complaint, and Otis filed an unfair labor charge, on the ground that Local 433's and the District Council's attempt to enforce the arbitration award conflicted with the NLRB's 10(k) determination.
 
 
 9
 The district court stayed the action for enforcement of the arbitration award pending resolution of the NLRB proceedings.
 
 
 10
 The three-member NLRB affirmed the decision of the administrative law judge and held that Local 433 engaged in an unfair labor practice by picketing the projects. Two of the three Board members found that Local 433 and the District Counsel engaged in an unfair labor practice by pursuing their lawsuit to enforce the arbitration award. One member dissented on the ground that pursuing the lawsuit was not an unfair labor practice.
 
 
 11
 The Board petitions for enforcement of its decision, which requires Local 433 and the District Council to drop their federal lawsuit, cease their attempts to enforce the state Board of Adjustment's arbitration award, and post remedial notices.
 
 II
 
 12
 This court will uphold decisions of the NLRB if substantial evidence supports the NLRB's factual findings and if the NLRB correctly applied the law. NLRB v. International Bhd. of Elec. Workers, Local 77, 895 F.2d 1570, 1573 (9th Cir. 1990). Under the substantial evidence standard of review, this court must affirm if there is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." Id. (quotation omitted). The NLRB's interpretation of the National Labor Relations Act ("NLRA") is entitled to deference and will be upheld if it is "reasonably defensible." NLRB v. International Union of Operating Eng'rs Local 501, 806 F.2d 1405, 1407 (9th Cir. 1986).
 
 III
 
 13
 The NLRB argues that Local 433's attempt to enforce the arbitration award after the NLRB issued its 10(k) determination was an unfair labor practice because the arbitration award conflicted with the 10(k) determination.
 
 
 14
 Section 8(b)(4(D) of the NLRA, 29 U.S.C. 158(b)(4)(D), makes it an unfair labor practice for a union:
 
 
 15
 (i) to engage in, or induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike ...; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is--
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work.
 
 
 19
 Whenever a party is charged with an unfair labor practice under section 158(b)(4)(D), the NLRB is "empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen." 29 U.S.C. Sec. 160(k) (section 10(k) of the NLRA). Here, the initial alleged unfair labor practice was Local 433's picketing, and the underlying dispute was whether iron workers represented by Local 433 or elevator constructors were entitled to install elevator fronts. Accordingly, the NLRB's duty was "to decide which of two or more employee groups [the iron workers or the elevator constructors] claiming the right to perform certain work tasks is right and then specifically to award such tasks in accordance with its decision." NLRB v. Radio & Tel. Broadcast Eng'rs Union Local 1212, 364 U.S. 573, 586 (1961).
 
 
 20
 The NLRB determined in the 10(k) proceeding that Local 433's picketing was an unfair labor practice and that elevator constructors, not iron workers, were entitled to install elevator fronts.[2] By this point, the Board of Adjustment (the arbitrator created under the state multiemployer contract) had already ruled that Local 433 should receive damages from Otis in an amount equal to the wages earned by the elevator constructors. The NLRB concedes that it was legal for Local 433 to file the initial grievance action, see Carey v. Westinghouse Corp., 375 U.S. 261, 266 (1964), but argues that Local 433's attempt to enforce the arbitration award after the NLRB's 10(k) determination was an unfair labor practice because the award was an attempt to assess a penalty from Otis for hiring elevator constructors instead of iron workers and thus conflicted with the 10(k) determination.
 
 
 21
 When the NLRB makes a 10(k) award, the award takes precedence over any inconsistent arbitration award. Carey, 375 U.S. at 272; Sea-land Serv., Inc. v. International Longshoremen's & Warehousemen's Union, Locals 13, 63, & 94, 939 F.2d 866, 872-73 (9th Cir. 1991); International Longshoremen's & Warehousemen's Union Local 32 v. Pacific Maritime Ass'n, 773 F.2d 1012, 1016 (9th Cir. 1985), cert. denied, 476 U.S. 1158 (1986). This court has held that a union's attempt to enforce an arbitration award that is inconsistent with a prior section 10(k) proceeding is an unfair labor practice and a failure to comply with the section 10(k) determination. Local 32, 773 F.2d at 1015-19 (upholding Board's finding of coercion and distinguishing cases where union's lawsuit was not coercion because there was no irreconcilable conflict between contractual remedy and Board's 10(k) determination); accord International Longshoremen's & Warehousemen's Union v. NLRB, 884 F.2d 1407, 1413-14 (D.C. Cir. 1989).
 
 
 22
 Here, as in Local 32, the arbitration award conflicted with the Board's 10(k) decision.[3] It was an attempt by Local 433 to obtain compensation for work that the Board determined it was not entitled to. The NLRB's determination that Local 433's enforcement action was an unfair labor practice is reasonable.
 
 
 23
 Local 433 argues, however, that because it obtained an award before the Board issued its 10(k) determination, its subsequent attempt to enforce the award was not coercion. This argument is not persuasive. Although the arbitrator here awarded damages before the 10(k) determination was final, while the arbitrator in Local 32 awarded damages after the 10(k) determination, see 773 F.2d at 1014, this factual distinction does not alter the result. See Local 30, United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Assoc. v. NLRB, 1 F.3d 1419, 1422, 1426-29 (3rd Cir. 1993). Local 433's pursuit of its action was conducted after and conflicted with the 10(k) decision. The Board's finding that this constituted an unfair labor practice is reasonable.
 
 
 24
 Local 433 also argues that its judicial enforcement action was protected under the First Amendment. Local 433, however, sought enforcement of an arbitration award that was a nullity after the Board's 10(k) determination, thus committing an unfair labor practice in violation of the NLRA. Courts have consistently recognized that the NLRB has authority to proscribe lawsuits that have an objective that is illegal under federal law, see Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 737 n. 5 (1983); Teamsters Local 776 v. NLRB, 973 F.2d 230, 235-37 (3rd Cir. 1993), cert. denied, 113 S. Ct. 1383 (1993), and Local 433 has provided convincing justification for extending First Amendment protection to this action.
 
 IV
 
 25
 The District Council argues that its pursuit of the enforcement action was not an unfair labor practice because it was not a party to the original 10(k) proceeding, which determined only whether iron workers or elevator constructors should install elevator fronts. Nevertheless, as the Board found, the District Council entered the dispute by filing a lawsuit on behalf of Local 433. Substantial evidence supports the Board's determination that the District Council acted on behalf of Local 433.
 
 
 26
 The Board's application for enforcement is GRANTED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The Board's unopposed motion to amend its application to add the District Council is granted
 
 
 [2]
 Local 433 does not contest this determination, and it did not resume or threaten to resume picketing. Moreover, although Local 433 failed to file a notice that it would comply with the Board's decision that the picketing was an unfair labor practice, the parties stipulated that the failure to file the notice was not an unlawful failure to comply with the Board's decision. Thus, the only issues are whether Local 433's and the District Council's attempts to enforce the arbitration award were unfair labor practices
 
 
 [3]
 Local 433 argues that the award does not conflict with the 10(k) decision because Otis had inconsistent agreements with the iron workers and elevator constructors, and the "predicament was thus of [Otis's] own choosing." Therefore, Local 433 concludes, awarding damages to the iron workers would not be inconsistent with awarding work to the elevator constructors. Substantial evidence, however, supports the NLRB's finding that Otis and the iron workers had no agreement to cover the disputed work