**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**MIKE YUROSEK & SON,
INC., Respondent.**

No. 93–70754.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1995.

Decided April 21, 1995.

Peter Winkler, Debroah E. Shrager, William Baudler, N.L.R.B., Washington, DC, for petitioner.

Richard B. Galtman, Barsamian & Associates, Fresno, CA, for respondent.

Before: BROWNING, BOOCHEVER, and BEEZER, Circuit Judges.

BOOCHEVER, Circuit Judge:

The National Labor Relations Board ("the Board") found that the company, Mike Yurosek & Son, Inc. ("Yurosek"), violated 29 U.S.C. § 158(a)(1) by discharging four employees after they refused to obey their supervisor's directive to work an extra hour. The Board held that the employees' refusal to work constituted a protected concerted activity, and the Board ordered Yurosek to offer the employees reinstatement and backpay. The Board now seeks enforcement of its order. We affirm the Board's findings and grant enforcement of its order.

### FACTUAL BACKGROUND

Mike Yurosek & Son, Inc., is a vegetable packing company. Santos Diaz, Antonio Lopez, Rafael Naraes, and Jose Rivera worked on the dock crew, and each had been employed by Yurosek between nine and fifteen years.

In early September 1990, warehouse manager Juan Garza announced to the dock crew members that he was reducing their hours to approximately thirty-six hours a week. Some of the employees complained that the new schedule would not provide "enough time to finish the work." Garza apparently responded: "That's the way it's going to be.... You are going to punch [out] ... exactly at the time that I tell you."

On September 24, pursuant to the new schedule, the crew was scheduled to work from 10:00 a.m. to 4:30 p.m. Shortly before 4:30, dock foreman Jaime Ortiz approached each of the four employees individually and instructed each to work an additional hour. All four employees refused to stay. They told Ortiz that they were required to follow the new schedule imposed by Garza. The employees then proceeded to punch out. Ortiz met them at the time clock and instructed them not to punch in the next morning but to meet him in the company dining hall.

The following day, the four employees were asked to wait in the company waiting room. Each employee was then individually called in turn into the personnel office and questioned by Garza, Ortiz, and three other company officers. When each employee was asked why he did not work the extra hour, each responded that he was adhering to the new schedule posted by Garza. After the interviews, the employees waited while the company officials discussed the matter. Each employee was then individually called back into the office and terminated for insubordination.

General Counsel for the National Labor Relations Board filed a complaint alleging that Yurosek violated 29 U.S.C. § 158(a)(1) by discharging the four employees for engaging in protected concerted activities. The ALJ initially granted Yurosek's motion to dismiss on the ground that the employees' conduct was neither concerted nor protected. The Board, however, reversed and remanded the case for further consideration. The ALJ reopened the record and then found that the employees' conduct was protected and concerted and that Yurosek committed an unfair labor practice in discharging them. The Board affirmed the ALJ's decision and or-

dered that the employees be reinstated and given backpay. The Board now seeks enforcement of its order. Yurosek seeks an order denying enforcement of the Board's order.

## DISCUSSION

I. *Substantial Evidence Supports the Board's Finding that Yurosek Violated 29 U.S.C. § 158(a)(1)*

■ Section 8(a)(1) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a)(1) (1988), states that employers commit an unfair labor practice if they "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157." Section 157 guarantees employees the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157 (1988). An employer therefore violates the Act by discharging or disciplining employees for exercising their right to engage in protected concerted activities. *Sierra Publishing Co. v. NLRB*, 889 F.2d 210, 215 (9th Cir.1989).

■ The Board found that Yurosek violated the Act by terminating the four employees when they refused to work the extra hour, because their conduct was both concerted and protected under the Act. The Board's order must be enforced "if the Board correctly applied the law and if its factual findings are supported by substantial evidence in the record as a whole." *Id.* Yurosek argues that there was insufficient evidence in the record to conclude that the employees' refus-

al to work the additional hour was a concerted or protected activity.

A. *Concerted Activity*

■ To be engaged in "concerted activity," an employee must act "with or on behalf of other employees, and not solely by and on behalf of the . . . employee himself." *Pacific Electricord Co. v. NLRB*, 361 F.2d 310, 310 (9th Cir.1966). The Act does not require that "employees combine with one another in any particular way." *NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822, 835, 104 S.Ct. 1505, 1513, 79 L.Ed.2d 839 (1984). If "a single employee, acting alone, participates in an integral aspect of a collective process," the activity may nonetheless be considered "concerted" for purposes of the Act. *Id.*

■ Yurosek argues that the employees did not act in concert in refusing to stay the extra hour. Yurosek maintains that because the employees did not discuss a common plan of action among themselves or expressly communicate a "common cause" to their employer, their conduct was not concerted. Furthermore, Yurosek claims that the employees were not treated as a group at any time. Ortiz approached each of them individually on the dock; each gave his own reason for refusing to stay;[1] and the company officers subsequently interviewed and discharged each employee separately.

The Board maintains that although the employees may not have discussed or expressed a shared motive for refusing to stay, they acted as a group and subsequently were treated as a group. When the employees punched out at the time clock at 4:30, Ortiz

---

1. The Board found that the employees each offered the same reason for refusing to work the additional hour: they all stated that they were honoring the schedule posted by Garza. Yurosek argues, however, that they did not have identical motives for leaving. Yurosek points to the portion of Diaz's testimony in which he suggested that the late timing of the request to work the extra hour was the reason why he refused to stay and that he would have remained had he been asked earlier in the day. Elsewhere in· the record, however, Diaz did testify that the reason he refused to stay was because "Garza had posted a schedule that we had to respect." The other three employees also testified that they left because they were obliged to adhere to the new schedule.

In any case, it is immaterial whether the employees had individual motivations for leaving. "The Act is concerned with concerted activity, not concerted thought. Any contention that a failure of all participants in a group activity to entertain identical reasons for engaging in that activity renders the activity individual rather than concerted is plainly without merit." *Advance Cleaning Serv.*, 274 N.L.R.B. 942, 944 n. 3 (1985); *see also Smithfield Packing Co.*, 258 N.L.R.B. 261, 263 (1981) (employees who walked off job because employer extended work hours were engaged in concerted action although each employee gave individually personal reason for leaving).

told them not to punch in the next day. None of them, however, broke from the group to return to work, despite the warning that their conduct would result in discipline. The Board contends that the employees "implicitly" supported each other by leaving the workplace together. *See El Gran Combo v. NLRB*, 853 F.2d 996, 1002 (1st Cir.1988) ("Even where an action may look at first to be solely individual in nature, subsequent events may reveal implicit group endorsement."). Moreover, on the following day, the company officers gathered the four employees in the company waiting room. Upon being questioned, each gave the same reason for refusing to work: they had to respect the schedule posted by Garza. Merely because each employee was individually called into the personnel office, questioned, and then terminated, does not mean that each man's conduct was isolated from the others'.

█ We find the Board's arguments persuasive. The record indicates that all four employees punched out in each other's presence at the time clock. All were long-term employees who, upon being asked, had worked beyond the scheduled quitting times on various occasions prior to the schedule change in early September 1990. On this occasion, however, all four made an unprecedented refusal to work, citing the schedule change as the reason. The fact that there was no express discussion of a group protest or "common cause" is not dispositive. In *Daniel Construction Co.*, 277 N.L.R.B. 795 (1985), the Board held that four employees' spontaneous refusal to continue working in freezing rain constituted concerted activity. "Although [there was] no verbal interaction between them—that is, ... no common goal they each expressed—implicit in the actions of all was a joining of action, if only by 'me, too,' to protest [the employer's] request that they work." *Id.* at 798–99. An inference that this same type of implicit group endorsement occurred in the instant case supports the Board's decision. Thus, the Board did not err in finding that the employees' joint refusal to work was concerted action.

█ Even if we concluded that the employees' conduct constituted merely individual activity, the Board was still entitled to find

that their individual actions were concerted to the extent they involved a "logical outgrowth" of prior concerted activity. The lone act of a single employee is concerted if it "stems from" or "logically grew" out of prior concerted activity. *See Ewing v. NLRB*, 861 F.2d 353, 361 (2d Cir.1988); *Salisbury Hotel, Inc.*, 283 N.L.R.B. 685, 687 (1987).

█ The Board contends that the employees' refusal to work was a logical outgrowth of their prior concerted protestations of the reduction in work hours when Garza originally announced the schedule change in early September. Diaz testified, "We told [Garza] that was not going to be enough time to finish the work." Naraes also testified that he complained about the reduction in hours. The Board argues that the employees' joint objections to the new schedule constituted prior concerted activity that not only indicated dissatisfaction with the way their work hours were being manipulated, but also gave rise to their subsequent refusal to work.

Yurosek claims that no such prior group protest occurred when Garza notified them of the schedule change. Garza testified that none of the employees complained or protested the reduction in hours. Therefore, according to Yurosek, there was no prior concerted activity from which the employees' subsequent refusal to work could have grown.

█ The ALJ and the Board, however, credited the employees' testimony that they did complain about the decrease in hours when it was announced by Garza in early September. The Board's "[c]redibility findings are entitled to special deference and may only be rejected when a clear preponderance of the evidence shows they are incorrect." *NLRB v. Champ Corp.*, 933 F.2d 688, 691 (9th Cir.) (as amended), *cert. denied*, 502 U.S. 957, 112 S.Ct. 416, 116 L.Ed.2d 437 (1991).

The record indicates that the employees did raise their concerns at the time. Both Diaz and Naraes testified that they complained when the new schedule was imposed. They also testified that Garza specifically told the employees, "Whether you like it or not that's the way it's going to be," which

implies that Garza was responding to some type of dissatisfaction with, if not protest of, the new schedule. Furthermore, the employees testified that Garza then demanded that they respect the schedule and not work "one minute more" or "one minute less." The Board was entitled to credit this testimony. There is no indication in the record that the Board's credibility findings are clearly incorrect.

Therefore, we conclude that substantial evidence supports the Board's finding that prior concerted activity existed and that the employees' later refusal to work the extra hour was an "outgrowth" of that concerted expression. Whether the employees' actions were themselves concerted activities, or merely individual extensions of prior concerted efforts, the evidence supports the Board's finding that their conduct was concerted for purposes of the Act.

### B. Protected Activity

■■■■ The fact that an activity is concerted does not necessarily mean that an employee can engage in the activity with impunity. The activity must also be one that is "protected" under the Act. See City Disposal, 465 U.S. at 837, 104 S.Ct. at 1514; Sierra Publishing, 889 F.2d at 215. Concerted employee activities are protected when "the activities can reasonably be seen as affecting the terms or conditions of employment." Gatliff Coal Co. v. NLRB, 953 F.2d 247, 251 (6th Cir.1992). Employees who refuse to work and who leave their employer's premises "in protest over wages, hours, or other working conditions" are engaged in protected activities. NLRB v. Modern Carpet Indus., Inc., 611 F.2d 811, 813 (10th Cir.1979).

■■■■ In this case, the Board found that the employees' refusal to work the extra hour was protected because it constituted a protest of their work hours. The Board stated:

[I]t is not crystal clear ... whether the employees were protesting (1) the Garza reduction in hours, (2) the Ortiz direction that they work an extra hour, or (3) a combination of the two, i.e., they felt that they were being subjected to inconsistent requirements. In any event, it is clear that a protest about any or all of the foregoing would be a protest about hours of work.

The Board also found that the employees' conduct was not an unprotected intermittent work stoppage [2] or an attempt to set their own hours. Because the employees' refusal to work occurred on only one occasion, the Board found that it was a single concerted action protected by the Act.

Yurosek argues that it was not protected activity because the employees themselves testified on cross-examination that the reason they refused to stay was because they were simply following the new schedule and not because they were "protesting" anything. The Board maintains, however, that "[h]ow an employee subjectively characterizes his or her own actions is not determinative in the Board's objective analysis of whether that employee has engaged in protected, concerted activity."

■■■ Although the employees themselves did not expressly label their conduct a "protest," the Board was entitled to interpret their action as a protest over the reduction in their work hours and the "inconsistency concerning their hours of work." An employee's subjective characterization of his reason for engaging in conduct cannot be dispositive of the question whether his conduct is protected. See Dreis & Krump Mfg. Co. v. NLRB, 544 F.2d 320, 328 n. 10 (7th Cir.1976) ("motives of the participants are irrelevant in terms of determining the scope of Section 7 protections"); Cooper Thermometer Co., 154 N.L.R.B. 502, 504 (1965) (in determining whether employee's conduct is protected, Board must focus on "nature of the activity

---

**2.** Employees are not entitled to determine unilaterally the conditions of their work by engaging in recurring, intermittent, or partial strikes. Sawyer of Napa, Inc., 300 N.L.R.B. 131, 137 (1990). Any work stoppage must be complete, i.e., the employees must withhold all their services from their employer. "They cannot pick and choose the work they will do or when they will do it. Such conduct constitutes an attempt by the employees to set their own terms and conditions of employment ... and is unprotected." Audubon Health Care Ctr., 268 N.L.R.B. 135, 137 (1983).

itself rather than the employee's motives for engaging in the activity").

For example, merely because employees insist that the motive for their concerted action is to conduct a legitimate protest does not mean their action is automatically protected. By the same token, in this case, although the employees did not explicitly indicate that their action was a protest, their unprecedented refusal to work an extra hour could objectively be viewed by the Board as a protest over the management's inconsistent manipulation of their hours. Thus, although Yurosek contends that the employees' conduct was unprotected insubordination, the evidence supports the Board's finding that it was protected activity.

■ Because substantial evidence supports the Board's findings that the employees were engaged in both concerted and protected activity, the Board did not err in concluding that Yurosek violated the Act by discharging them.

II. *Yurosek Failed to Show that It Would Have Discharged the Employees Even in the Absence of the Protected Concerted Activity*

■ Once it is established that an employee was engaged in concerted, protected activity, General Counsel must show that the activity was " 'a substantial or motivating factor' in the decision to terminate the employee." *NLRB v. Howard Elec. Co.,* 873 F.2d 1287, 1290 (9th Cir.1989) (quoting *NLRB v. Transportation Mgmt. Corp.,* 462 U.S. 393, 401–03, 103 S.Ct. 2469, 2474–75, 76 L.Ed.2d 667 (1983)). If such a showing is made, the burden shifts to the employer to demonstrate that the termination would have occurred regardless of the protected conduct. *See Wright Line,* 251 N.L.R.B. 1083, 1089 (1980), *enforced,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).

■ In this case, there was no dispute that Yurosek discharged the employees for their refusal to work the extra hour. Thus, it became Yurosek's obligation to show that the four employees would have been dis-

charged even if they had not refused to stay. Yurosek argues that the employees' conduct was reasonably viewed by Yurosek as insubordination, and that such insubordination was lawfully punishable by discharge, regardless of any connection to its concerted or protected nature.

This argument misses the point, however, because the "insubordination" consisted of the employees' protected concerted refusal to stay, and Yurosek offers no reason why the employees would have been terminated absent that conduct. Yurosek does not claim, for example, that the employees were discharged because they were incompetent or because the company's financial straits required lay-offs. Therefore, Yurosek failed to meet its burden of proving that it would have discharged the four employees even if they had not engaged in the protected concerted activity.

Because the employees' refusal to work the additional hour was the motivating factor for Yurosek's decision to terminate them, the Board correctly found that Yurosek violated the Act by discharging each of them.

## CONCLUSION

Substantial evidence in the record as a whole supports the Board's findings that the four employees were engaged in protected concerted activities. Yurosek therefore committed an unfair labor practice in discharging them. Accordingly, we grant enforcement of the Board's order.

ENFORCEMENT GRANTED.