89 F.3d 645
 152 L.R.R.M. (BNA) 2847, 96 Cal. Daily Op.
Serv. 5245,
96 Daily Journal D.A.R. 8475
 WALNUT CREEK HONDA ASSOCIATES 2, INC., dba Walnut Creek
Honda, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
Automotive Machinists Lodge No. 1173 Teamsters Union Local
No. 315, Respondent-Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
WALNUT CREEK HONDA ASSOCIATES 2, INC., dba Walnut Creek
Honda, Respondent.
 Nos. 95-70278, 95-70343.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 13, 1996.
Decided July 16, 1996.
 
 1
 Beth E. Aspedon and Philip E. Drysdale, Fitzgerald, Abbott & Beardsley, Oakland, California, for the petitioner--cross-respondent.
 
 
 2
 David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for the respondent-intervenor.
 
 
 3
 Charles Donnelly and Joseph J. Jablonski, Jr., National Labor Relations Board, Washington, D.C., for the respondent--cross-petitioner.
 
 
 4
 Petition for Review and Cross-Petition for Enforcement of an Order of the National Labor Relations Board. NLRB No. 32-CA-12783.
 
 
 5
 Before: PREGERSON and TROTT, Circuit Judges, and WINMILL, District Judge.*
 
 
 6
 WINMILL, District Judge.
 
 Introduction
 
 7
 This is an appeal from an NLRB decision ordering Walnut Creek Honda (Honda) to restore lost wages and benefits to striking workers. The strike began after negotiations over a collective bargaining agreement (CBA) broke down. The NLRB found that the strikers were protesting Honda's unfair labor practice of negotiating to impasse over a permissive subject of bargaining, and ordered restoration of their lost wages and benefits. Honda appeals. We affirm.
 
 Background
 
 8
 Honda operates an automobile dealership and service department in Walnut Creek, California. The Machinists Automotive Trades District Lodge No. 190 of Northern California (hereinafter referred to as the Union) represents Honda's mechanics and parts department employees. The CBA between the Union and Honda was due to expire on June 30, 1992.
 
 
 9
 Honda and the Union met on five occasions in June, 1992, attempting to negotiate a new CBA. At the first meeting on June 8, 1992, Honda informed the Union that the New Car Dealers of Contra Costa (the "Association"), a multi-employer bargaining group, had approved Honda's application for membership. The Association by-laws provide that every member agrees to give a power of attorney to the Association to act for the member in all labor relations matters. The member agrees not to bargain collectively with unions "other than by and through the [Association] acting pursuant to the power of attorney...." The Association had negotiated a CBA between its member dealers and their unions that was due to expire in July, 1993. The Association allowed Honda to negotiate a CBA with the Union so long as that CBA conformed to the Association CBA.
 
 
 10
 Honda and the Union were unable to reach an agreement during their five negotiating sessions in June, 1992. The Union went on strike on July 1, 1992. Shortly thereafter, Honda began hiring permanent replacements. On August 3, 1992, Honda sent a letter to all strikers informing them that they had been "permanently replaced," and that if they wanted their jobs back they would need to file new applications.
 
 
 11
 On October 23, 1992, the strikers, through the Union, made an unconditional offer to return to work. Honda treated the strikers as economic strikers, and put them on a preferential hiring list. The strikers have since been rehired, but with diminished wages and benefits.[1]
 
 
 12
 The Union filed an unfair labor practice charge against Honda for failing to "make whole" the rehired strikers. The NLRB issued a complaint charging Honda with the unfair labor practice of bargaining to impasse over a permissive subject of bargaining. The NLRB claimed that Honda had bargained to impasse over the Association membership issue, while Honda responded that the main dispute was over the length of the CBA, a mandatory subject of bargaining.
 
 
 13
 An evidentiary hearing was held before an Administrative Law Judge (ALJ) who heard two days of conflicting testimony from Honda's negotiator, attorney Charles Waud, and the Union negotiators, Business Representative Bernie Tolentino and employee Gene Cardoza. Waud testified that Tolentino "was very much supportive of the idea [that Honda join the Association] ... because it made it easier for the Union to bargain with one large group on behalf of a large number of employers." Waud went on to say that the Union "welcomed the Company's admission [into the Association]." When he was notified of the strike, Waud testified, "neither Mr. Tolentino nor Mr. Cardoza indicated that [Honda's] proposal that it join the Association was the reason for the strike or the reason for the employees being unhappy with [Honda's] proposal."
 
 
 14
 Waud's account of the negotiations was directly contradicted by both Cardoza and Tolentino. Cardoza testified that he and his fellow employees were concerned about a rumor that the "Association would be on strike the next year because there was going to be a big fight over the health and welfare plan." Troubled by the specter of an Association strike, Cardoza was, in his own words, "outspoken" in his opposition to Honda's joining the Association and adopting the Association CBA. He testified that he told Waud "that if they forced us in the Association, we'd strike."
 
 
 15
 But Honda did not relent on the Association issue. Honda submitted its "final and best" offer which once again proposed adopting the Association CBA. The employees rejected the offer and voted to go on strike the next day. At that point, Cardoza asked Waud to "give me something to take back to [the employees]. Maybe I can talk them out of striking." Waud's response, according to Cardoza, was "you've shaken all the nuts off the tree."
 
 
 16
 Cardoza then made two proposals. First, he indicated he might be able to deliver the employees' consent to Honda joining the Association if Waud could "guarantee we won't have to strike if they go on strike next year." Waud responded that "if they strike, you got to strike." Second, Cardoza proposed that Honda wait a year before going into the Association so that the Honda employees could avoid any Association strike in 1993. Once again, Waud rejected the proposal, according to Cardoza.
 
 
 17
 Tolentino corroborated Cardoza's testimony. Tolentino testified that "we were fearful that the Association may possibly go on strike in June of 1993," and that he and Cardoza told Waud that the Union did not want to adopt the Association CBA.
 
 
 18
 The ALJ believed Cardoza and Tolentino over Waud. The ALJ found that Waud's testimony that the Union never objected to Honda's proposal to join the Association "is contradicted by the documentary evidence, the credible testimony of Tolentino and Cardoza, and Waud's own testimony." The ALJ cited a letter written by Waud to the Association wherein Waud stated that the strike was "in protest of [Honda's] proposal that the Union accept the [Association CBA]." Waud's own testimony was inconsistent, the ALJ pointed out, because while he testified at one point that the Union "welcomed" the opportunity to deal with the Association, he later conceded that Cardoza raised concerns about an Association strike in 1993.
 
 
 19
 The ALJ ordered Honda to reinstate the strikers to the positions they held prior to the strike, and to restore lost wages and benefits. The NLRB adopted the ALJ's decision, and Honda appealed.
 
 Standard of Review
 
 20
 Decisions by the NLRB will be upheld on appeal if findings of fact are supported by substantial evidence and if the agency correctly applied the law. Retlaw Broadcasting Co. v. NLRB, 53 F.3d 1002, 1005 (9th Cir.1995). "A reviewing court may not displace the NLRB's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Id. at 1005 (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951)). The ALJ's credibility findings are entitled to special deference and may only be rejected when a clear preponderance of the evidence shows that they are incorrect. NLRB v. Mike Yurosek & Son, Inc., 53 F.3d 261, 265 (9th Cir.1995).
 
 Legal Standards
 
 21
 The NLRB found that Honda committed an unfair labor practice by bargaining to impasse over a permissive subject of bargaining. Section 8(a)(5) of the National Labor Relations Act makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees...." The term "to bargain collectively" is defined in § 8(d) as the "mutual obligation of the employer and the representative of the employees to ... confer in good faith with respect to wages, hours, and other terms and conditions of employment."
 
 
 22
 The Supreme Court has held that wages, hours, and other terms and conditions of employment are mandatory subjects of bargaining while all other subjects are permissive subjects. First Nat'l. Maintenance Corp. v. N.L.R.B., 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981). "[B]oth employer and union may bargain to impasse over [mandatory subjects] and use the economic weapons at their disposal to attempt to secure their respective aims." Id. The parties may not, however, insist on permissive subjects to the point of impasse. Id. at 675, n. 13, 101 S.Ct. at 2579, n. 13.
 
 
 23
 It is undisputed that the size or scope of the bargaining unit is a permissive subject. Boise Cascade Corp. v. N.L.R.B., 860 F.2d 471, 474 (D.C.Cir.1988). It is also undisputed that the length of the CBA is a mandatory subject. N.L.R.B. v. Yutana Barge Lines, Inc., 315 F.2d 524 (9th Cir.1963).
 
 
 24
 The NLRB's special expertise in evaluating impasse issues was recognized in Financial Inst. Employees of America v. N.L.R.B., 738 F.2d 1038, 1043 (9th Cir.1984):
 
 
 25
 [I]mpasse is a question of fact involving the [NLRB's] presumed experience and knowledge of bargaining problems.... [I]n the whole complex of industrial relations few issues are less well suited to appellate judicial appraisal than evaluation of bargaining processes or better suited to the expert experience of the board which deals constantly with such problems.
 
 
 26
 (quoting Dallas Gen. Drivers Local 745 v. N.L.R.B., 355 F.2d 842, 844-45 (D.C.Cir.1966)).
 
 
 27
 We have defined impasse as a "state of facts in which the parties, despite the best of faith, are simply deadlocked." Lab. Health & Wel. Trust v. Adv. Lightweight Concrete, 779 F.2d 497, 500 n. 3 (9th Cir.1985) (quoting R. Gorman, Basic Text on Labor Law, Unionization, and Collective Bargaining 448 (1976)), aff'd, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988). To determine the distinguishing marks of an impasse,
 
 
 28
 [t]he Board and courts look to such matters as the number of meetings between the company and the union, the length of those meetings and the period of time that has transpired between the start of negotiations and their breaking off. There is no magic number of meetings, hours or weeks which will reliably determine when an impasse has occurred.
 
 
 29
 Id.
 
 Analysis
 
 30
 1. Was there an impasse?
 
 
 31
 Honda's first argument in this appeal is that the ALJ erred in finding that there was an impasse on June 30, 1992. We disagree. There was substantial evidence to support the decision of the ALJ. He heard testimony that Honda submitted what it referred to as its "best and final offer"; that the Union members rejected that offer and voted to go on strike the next day; that the Union informed Honda about the employees' vote and attempted to reach a last-minute compromise; and that Honda--knowing that a strike would begin the next day--flatly rejected any compromise.
 
 
 32
 This is strong evidence of an impasse. Honda argues that negotiations continued after June 30, 1992, thereby indicating that no impasse had been reached. But an impasse is not a complete "rupture of the bargaining process." Charles D. Bonanno Linen Serv. v. NLRB, 454 U.S. 404, 412, 102 S.Ct. 720, 725, 70 L.Ed.2d 656 (1982). "As a recurring feature in the bargaining process, impasse is only a temporary deadlock or hiatus in negotiations 'which in almost all cases is eventually broken, through either a change of mind or the application of economic force.' " Id. (quoting Charles D. Bonanno Linen Serv., Inc., 243 NLRB 1093, 1093-94 (1979)). Here, the ALJ found that Honda's strategy of hiring replacements for the strikers forced negotiations after July 1, 1992 to center on reinstatement of the strikers. Bonanno specifically contemplates this circumstance where an impasse is broken by the use of economic force. And Bonanno recognizes that a broken impasse does not mean that an impasse never occurred.
 
 
 33
 The ALJ and the NLRB evaluate impasse issues with a special expertise gained by long experience. Financial, 738 F.2d at 1043. We will not displace their choice between two fairly conflicting views. Retlaw, 53 F.3d at 1005. There is substantial evidence in the record supporting the decision that an impasse was reached on June 30, 1992. We therefore affirm that portion of the NLRB's decision.
 
 
 34
 2. Was the impasse over the length of the CBA or Association membership?
 
 
 35
 The ALJ found that "the real dispute between the parties concerned [Honda's] attempt to join the Association and impose the Association agreement on its employees." Honda attacks this ruling first on the ground that the ALJ erred in "interpreting" a July 10, 1992 letter by the Union's counsel David Rosenfeld to Waud. That letter, written on the tenth day of the strike, states that "the Union has absolutely no objections to the company joining the Association. The dispute between the parties appears to be the length of the collective bargaining agreement." Honda claims that this letter reveals that the real dispute was over the length of the CBA, a mandatory subject of bargaining.
 
 
 36
 Rosenfeld testified before the ALJ that he wrote the letter because he was concerned that the Union's strike might be seen as an attempt to coerce Honda in its choice of a bargaining unit, an unfair labor practice. The ALJ discounted the impact of the letter because it continued to reject exposing the Union to an Association strike in 1993. The letter stated that the CBA must contain a clause that neither Honda nor the Union would recognize any Association strike in 1993, and that the full adoption of the Association CBA would not occur until after a new Association CBA had been agreed upon. Thus, the letter continued the Union's objection to the scope of the bargaining unit, although now the Union was objecting to adopting the Association's CBA rather than to joining the Association.
 
 
 37
 The ALJ also recognized, as discussed previously, that Honda's lead negotiator had written a letter describing the strike as motivated by Honda's insistence on adopting the Association's CBA. In addition, the ALJ found credible the testimony of Cardoza and Tolentino that the main dispute was over Honda's attempt to adopt the Association's CBA. The contrary testimony from Honda's Waud lacked credibility, according to the ALJ. The ALJ's credibility determinations are entitled to "special deference" and may only be rejected when a clear preponderance of the evidence shows they are incorrect. Yurosek, 53 F.3d at 265. The ALJ's finding that the impasse was over the scope of the bargaining unit hinges largely on credibility findings. Those findings have not been shown to be incorrect by a clear preponderance of the evidence. We therefore affirm the finding that the impasse was over the scope of the bargaining unit.
 
 Conclusion
 
 38
 We employ a deferential standard of review to recognize the expertise of the ALJ and the NLRB. That expertise is on display here: the ALJ's decision--affirmed by the NLRB--is comprehensive, insightful, and well-written. We therefore deny Honda's petition for review and grant the NLRB's petition for enforcement of its order.
 
 
 39
 AFFIRMED.
 
 
 
 *
 The Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 The Union's counsel represented at oral argument that one striker was hired by another company