**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CESAR ANTONIO MORENO, an individual,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>UTILIQUEST, LLC, a Georgia Limited Liability Company,<br>*Defendant-Appellee*. | No. 21-55313<br><br>D.C. No.<br>2:20-cv-03156-AB-MRW<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted January 12, 2022
Pasadena, California

Filed March 18, 2022

Before: A. WALLACE TASHIMA and MILAN D.
SMITH, JR., Circuit Judges, and STEPHEN J.
MURPHY, III,[*] District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Stephen Joseph Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

## SUMMARY[**]

### Labor Law

The panel affirmed the district court's dismissal, as preempted by the National Labor Relations Act ("NLRA"), of Cesar Moreno's wrongful termination lawsuit against his former employer, UtiliQuest, LLC.

Although the NLRA does not contain express preemption provisions, the Supreme Court held that two categories of state action are implicitly preempted: (1) laws that regulate conduct that is either protected or prohibited by the NLRA (*Garmon* preemption); and (2) laws that regulate in an area Congress intended to leave unregulated or controlled by the free play of economic forces (*Machinists* preemption). UtiliQuest contends that *Garmon* preemption applied to Moreno's claims related to his termination.

Moreno brought several California state law claims relating to his termination: intentional misrepresentation; fraud and deceit; whistleblowing retaliation; and wrongful termination in violation of public policy. The panel held that all of these claims arguably implicated NLRA sections 7 and 8, and were subject to *Garmon* preemption.

The panel considered, and rejected, Moreno's three arguments for why these claims were not subject to *Garmon* preemption. First, he argued that even if his termination-based claims implicated the NLRA, preemption was

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

inappropriate because of the compelling local interest underlying his claims. The panel held that the risk of interference with the National Labor Relations Board's jurisdiction was sufficient to outweigh the state's interest in Moreno's claims, and *Garmon* preemption was appropriate. Second, Moreno argued that his grievances with UtiliQuest were personal in nature and lacked any element of "concerted activity" necessary to establish an NLRA violation. The panel rejected his contention and held that when Moreno received a raise and other employees did not, the NLRB could consider Moreno's advocacy for his fellow co-workers to be "concerted activity." Third, Moreno argued that he was a statutory supervisor exempt from the NLRA. The panel held that the NLRB could arguably consider Moreno an employee, rather than a supervisor.

Moreno also asserted wage and hour-related claims against UtiliQuest after his termination. The district court dismissed the claims for failure to state a claim. On January 10, 2022, UtiliQuest informed this court of a class action settlement in California Superior Court. The class consisted of UtiliQuest employees who, like Moreno, used company vehicles to commute to and from worksites. As part of the settlement, class members released their wage and hour claims. Because Moreno did not opt out of the settlement, UtiliQuest argued these claims were moot. The panel held that the California Superior Court's settlement judgment was entitled to full faith and credit. Applying the principles of claim preclusion, the panel affirmed the district court's dismissal of Moreno's wage and hour claims.

**COUNSEL**

Joshua M. Mohrsaz (argued) and Edwin Pairavi, Pairavi Law, P.C., Los Angeles, California, for Plaintiff-Appellant.

Alex Meier (argued) and Jill A. Porcaro, Seyfarth Shaw LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

Plaintiff Cesar Moreno appeals the district court's dismissal of his lawsuit against his former employer, Defendant UtiliQuest. Moreno alleges that UtiliQuest promised him that if he convinced all of his fellow employees to "sign away" their union rights, they would each receive a ten percent raise. Once Moreno obtained signatures from his co-workers releasing their union rights, UtiliQuest gave him a ten percent raise. Moreno soon learned, however, that UtiliQuest did not give any other employees the promised raise. Moreno contends he was terminated after confronting his supervisors about UtiliQuest's breach of its promise.

Moreno brought various claims related to his termination, but the district court dismissed them because it found that they were preempted by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq*. Moreno also appeals the dismissal of his wage and hour claims, but as his appeal was pending, the Superior Court of California entered judgment on a final settlement precluding these claims. We affirm the district court's dismissal of Moreno's complaint.

**FACTUAL AND PROCEDURAL BACKGROUND**

Moreno worked for UtiliQuest as a Field Technician from 2007 until 2018. At the time he was terminated, Moreno was a Lead Field Technician "responsible for supervising the work of field technicians" on job sites. Moreno alleges that in June 2017, UtiliQuest's management asked him to collect signatures from "all other employees" to "release their [union] rights" in exchange for a ten percent raise "in their hourly pay per year" for all who signed. Moreno and the other employees each signed "the union release" in June 2017. UtiliQuest gave Moreno a ten percent raise but did not give a raise to his fellow employees. On multiple occasions, Moreno complained to his managers about his co-workers not receiving the promised raises. He alleges that UtiliQuest retaliated against him because of his advocacy on behalf of the other employees. On February 13, 2018, Moreno contends that someone in Human Resources falsely accused him of taking money from other employees in exchange for providing them with overtime hours. On February 28, 2018, Moreno's manager fired him without explanation.

Moreno brought several state law claims related to his termination. Moreno also asserted wage and hour-related claims against UtiliQuest after his termination. He contends that UtiliQuest did not provide him with compensation for travel time between his home and the first and last job sites for the day. Moreno also alleges that the nature of his job responsibilities, together with UtiliQuest's policies, prevented him from taking an "uninterrupted 30 minute meal break."

The district court held that the NLRA preempted Moreno's termination claims and dismissed them. The district court also dismissed Moreno's wage and hour claims

pursuant to Federal Rule of Civil Procedure 12(b)(6) because he failed to state a cause of action.  Moreno appealed.

On January 10, 2022—two days before oral argument in our court—UtiliQuest informed us of a class action settlement in California Superior Court that was finalized on November 29, 2021.  The California class consisted of UtiliQuest employees who, like Moreno, used company vehicles to commute to and from worksites.  As part of the settlement, class members released their wage and hour claims.  Because Moreno did not opt out of the California settlement, UtiliQuest argued that the wage and hour claims portion of Moreno's appeal was moot.  We ordered, and have now received, supplemental briefing on this issue.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review de novo the district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  *Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir. 2012) (citing *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)).  In reviewing a motion to dismiss, we accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party.  *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008).

## ANALYSIS

## I.

The NLRA does not contain express preemption provisions, but the Supreme Court held that "two categories of state action are implicitly preempted: (1) laws that regulate conduct that is either protected or prohibited by the

NLRA (*Garmon* preemption), and (2) laws that regulate in an area Congress intended to leave unregulated or 'controlled by the free play of economic forces' (*Machinists* preemption)." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 887 (9th Cir. 2018) (quoting *Chamber of Com. of the U.S. v. Brown*, 554 U.S. 60, 65 (2008)). UtiliQuest contends that *Garmon* preemption applies to Moreno's claims.

Sections 7 and 8 of the NLRA provide a private cause of action for claims "based on the conduct of labor organizations or their agents that constitute unfair labor practices." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 950 (9th Cir. 2014). Specifically, NLRA Section 7 protects the right of employees "to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 bars unfair labor practices by employers and labor organizations and also makes it illegal "for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7 of the NLRA]." *Id.* at § 158(a)–(b).

"When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). *Garmon*'s central concern "is the *potential* for conflict with federal policy." *Retail Prop. Tr.*, 768 F.3d at 952. The Supreme Court acknowledged that it is not always clear whether a particular activity is preempted, but "[e]ven when a court is unsure," it should leave the

determination to the National Labor Relations Board (NLRB). *Bassette v. Stone Container Corp.*, 25 F.3d 757, 760 (9th Cir. 1994) (citing *Garmon*, 359 U.S. at 244–45).

Moreno brought several California state law claims relating to his termination: intentional misrepresentation (Count 7); fraud and deceit (Count 8); whistleblowing retaliation (Counts 9 & 10); and wrongful termination in violation of public policy (Count 11). In connection with *Garmon* preemption, "[i]t is not the label affixed to the cause of action under state law that controls the determination of the relationship between state and federal jurisdiction." *United Ass'n of Journeymen & Apprentices v. Borden*, 373 U.S. 690, 698 (1963). In *Borden* the Supreme Court held that plaintiff's claims were preempted even though his complaint "sounded in contract as well as in tort" because the "facts as alleged in the complaint, and as found by the jury," could arguably support a finding that the conduct violated the NLRA. *Id.* at 694, 698. As the district court correctly found here, all of Moreno's claims arguably implicate NLRA Sections 7 and 8 and are subject to *Garmon* preemption.

Moreno's intentional misrepresentation and fraud claims are both treated the same under California law. *Compare Lazar v. Superior Court*, 909 P.2d 981, 984–85 (Cal. 1996), *with Tenet Healthsystem Desert v. Blue Cross of Cal.*, 199 Cal. Rptr. 3d 901, 914–15 (Ct. App. 2016). The elements of a fraud or intentional misrepresentation claim are: (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud or induce reliance, (4) justifiable reliance, and (5) damage. *Lazar*, 909 P.2d at 984. Moreno's underlying theory for both counts is that UtiliQuest deceived him into convincing other employees to sign away their union rights for a ten percent raise. What Moreno alleges UtiliQuest

did—offering employees a benefit to give up their union rights—is a textbook NLRA violation.  *See* 29 U.S.C. §§ 157, 158(a)(1).

Moreno's fraud and misrepresentation claims deal not primarily with UtiliQuest's alleged illegal conduct, but rather with the fact that UtiliQuest deceived him.  In determining whether there is potential for conflict with the NLRA, however, we cannot ignore the subject of UtiliQuest's alleged deception.  The elements of misrepresentation and intent to defraud in the state law claims both touch on conduct clearly covered by the NLRA.  For example, a jury would need to determine whether UtiliQuest made the misrepresentation, and such a finding would strongly suggest an NLRA Section 8 violation.

Holding that Moreno's fraud and misrepresentation claims are preempted reflects a logical extension of our holding in *Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401 (9th Cir. 1991).  In *Milne* we considered whether the NLRA preempted a fraud claim.  We concluded that because an employer's alleged misrepresentations did not implicate the NLRA, the fraud claim survived *Garmon* preemption.  *Id.* at 1414–15.  Here, UtiliQuest's alleged misrepresentation would violate the NLRA and thus involves national labor policy.  The challenged conduct could be seen as "an attempt on the part of [the employer] to interfere with the collective bargaining process or to diminish the union's representative role."  *Id.* at 1415–16 (quoting *Wells v. Gen. Motors Corp.*, 881 F.2d 166, 171 (5th Cir. 1989)) (alteration in the original).

Moreno's whistleblowing retaliation and wrongful termination claims are also preempted.  Cal. Lab. Code §§ 98.6; 1102.5.  To establish a prima facie whistleblowing case, a plaintiff must show that (1) he engaged in a protected

activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the two. *See St. Myers v. Dignity Health*, 257 Cal. Rptr. 3d 341, 352 (Ct. App. 2019). A California wrongful termination in violation of public policy claim "requires a showing that there has been a violation of a fundamental public policy embodied in statute." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1150 (9th Cir. 2017).

Moreno's central theory in his whistleblowing retaliation and wrongful termination claims is that he was terminated for advocating on behalf of his fellow employees after UtiliQuest refused to give them a promised raise. In *Bassette*, we held that an employee's wrongful termination claim against her employer was preempted because the employer's alleged conduct arguably violated the NLRA. 25 F.3d at 761. The same reasoning applies in this case because UtiliQuest's conduct arguably violated the NLRA. Thus, there is clear potential for conflict between state law and federal policy.

On appeal, Moreno advances three arguments for why his claims are not subject to *Garmon* preemption. He contends that the local interest exception to *Garmon* preemption applies, that his grievances lack the "concerted activity" element necessary for an NLRA claim, and that he is a statutory supervisor exempt from the NLRA. We address, and reject, each in turn.

**A.**

Moreno argues that even if his termination-based claims implicate the NLRA, preemption is inappropriate because of the compelling local interest underlying his claims. Although *Garmon* preemption is broad, one well-recognized exception is when a regulation "touches on interests so

deeply rooted in local feeling and responsibility that" preemption could not be inferred. *Loc. 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676 (1983) (citing *Garmon*, 359 U.S. at 243–44). State laws "of general applicability" can be enforced "even though aspects of the challenged conduct" are arguably covered by the NLRA. *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 194–95 (1978). To determine whether this exception applies, courts are required to balance the state's interest in protecting its citizens with the risk of interfering with the NLRB's ability to adjudicate the controversy. *Id.* at 196–97.

In determining whether adjudicating a state claim risks interference with the NLRB's jurisdiction, we inquire whether "the controversy presented to the state court is identical with that which could be presented to the Board." *Belknap, Inc. v. Hale,* 463 U.S. 491, 510 (1983). When controversies are identical, "a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board." *Sears, Roebuck & Co.*, 436 U.S. at 197. Importantly, the *claims* need not be identical, but rather the focus is on whether the "controversy presented" is identical. A finding of *Garmon* preemption does not require "that a plaintiff have a certain remedy before the Board, or even that the Board will hear the claim in the first place." *Bassette*, 25 F.3d at 759–60.

When we consider Moreno's fraud and misrepresentation claims, we note that a state has a "substantial interest in protecting its citizens from misrepresentations that have caused them grievous harm." *Belknap*, 463 U.S. at 511. We also observe that it would be irrelevant to the NLRB that UtiliQuest's promise to Moreno was false—UtiliQuest's alleged promise would likely

violate the NLRA regardless of its intent to honor its promise. In any event, the underlying controversy is substantially identical and the facts as alleged in Moreno's complaint could support a finding that UtiliQuest violated the NLRA. *See Borden*, 373 U.S. at 694. The risk of interference with the NLRB's jurisdiction is sufficient to preclude the state's interest in combatting fraud. *Garmon* preemption is appropriate.

The risk of interference between Moreno's whistleblowing and retaliation claims and NLRA-related conduct is even more extensive than with the fraud claims. Moreno alleges that UtiliQuest terminated him for advocating on behalf of his fellow employees for a promised ten percent raise. Such conduct arguably violates the NLRA. Of course, the state also has an interest in protecting its citizens from employers' illegal actions, but the controversies presented in Moreno's whistleblowing and retaliation claims are substantially identical.

## B.

Moreno contends that his grievances with UtiliQuest were personal in nature and lacked any element of "concerted activity" necessary to establish an NLRA violation. *See NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 830–31 (1984). The term "concerted activit[y]" in Section 7 of the NLRA "embraces the activities of employees who have joined together in order to achieve common goals," but can also include actions of a single employee. *Id.* Section 7 requires both "concert" and activity for "mutual aid or protection." *E.I. Du Pont De Nemours & Co. v. NLRB*, 707 F.2d 1076, 1077–78 (9th Cir. 1983). The NLRA does not protect an employee acting alone to complain about an issue, even if the issue concerns mutual aid or protection. "[I]t is the backdrop of other group activity

that transforms it into concerted action." *Id.* at 1079. Even if "the employees' conduct constituted merely individual activity," the NLRB would still be entitled to find that "individual actions were concerted to the extent they involved a 'logical outgrowth' of prior concerted activity." *NLRB v. Mike Yurosek & Son, Inc.*, 53 F.3d 261, 265 (9th Cir. 1995). This is so because "[t]he lone act of a single employee is concerted if it 'stems from' or 'logically grew' out of prior concerted activity." *Id.*

The question before us is whether the "activity is arguably subject to § 7 or § 8 of the Act." *Garmon*, 359 U.S. at 245. If conduct is "arguably" protected, the party claiming preemption must show that the NLRB could legally decide the case in its favor. *Int'l Longshoremen's Ass'n, v. Davis*, 476 U.S. 380, 395 (1986). "This is not a demanding standard." *Idaho Bldg. & Const. Trades Council v. Inland Pac. Chapter of Associated Builders & Contractors*, 801 F.3d 950, 965 (9th Cir. 2015). UtiliQuest must (1) "advance an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the [NLRB]" and (2) offer "enough evidence to enable the court to find that the [NLRB] reasonably could uphold a claim based on such an interpretation." *Davis*, 476 U.S. at 394–95 (quoting *Marine Eng'rs v. Interlake S.S. Co.*, 370 U.S. 173, 184 (1962)).

UtiliQuest has met this burden. Although Moreno contends that he acted on his own volition, the NLRB could reasonably find that his "individual actions were concerted to the extent they involved a 'logical outgrowth' of prior concerted activity." *Mike Yurosek & Son, Inc.*, 53 F.3d at 265. Moreno convinced other employees to relinquish their union rights in exchange for a ten percent raise. When Moreno received a raise and other employees did not, the

NLRB could consider Moreno's advocacy for his fellow co-workers to be "concerted activity."

## C.

The parties also disagree about whether Moreno was a supervisor at the time of his termination. Section 2(3) of the NLRA excludes supervisors from the protections of the NLRA. 29 U.S.C. § 152(3). Therefore, if Moreno was a statutory supervisor, his claims would not be preempted because he could not bring them before the NLRB. The NLRA defines a supervisor as one who (1) has authority to engage in certain supervisory functions defined in the Act,[1] (2) uses independent judgment when exercising this authority, and (3) holds this authority in the interest of the employer. *NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 713 (2001). We need not determine whether Moreno was a supervisor. Rather, the relevant question is whether he "was arguably an employee, rather than a supervisor." *Davis*, 476 U.S. at 394.

Moreno contends that as Lead Field Technician, he was a supervisor responsible for "assigning all work to the field technicians and managing all of the work orders." The district court rejected Moreno's supervisor argument because it found his allegations in the complaint conclusory. Because UtiliQuest had the burden to show that the NLRB could legally decide that Moreno was an employee, the district court erred in its reasoning. *See Chamber of Com. of the U.S. v. City of Seattle*, 890 F.3d 769, 795 (9th Cir. 2018).

---

[1] Supervisory functions are defined as the power "to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances." 29 U.S.C. § 152(11).

"Nevertheless, we may affirm based on any ground supported by the record." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

UtiliQuest's motion to dismiss included notices of election from the NLRB, which are public records subject to judicial notice. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006). The notices reveal that in two prior California union elections involving UtiliQuest's workforce, the NLRB determined that Lead Technicians fall within the collective bargaining unit. As UtiliQuest admits, these records are not conclusive proof as to what the NLRB would decide in Moreno's case, but readily meet the burden to show that the NLRB would "arguably" consider Moreno an employee.

## II.

The Full Faith and Credit Act, 28 U.S.C. § 1738, "directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). The California Superior Court's settlement judgment is entitled to full faith and credit. Applying the principles of claim preclusion, we affirm the district court's dismissal of Moreno's wage and hour claims.

The Supreme Court's decision in *Matsushita*, controls the outcome here. *Id.* In *Matsushita*, the plaintiffs appealed a summary judgment dismissal to our court. *Id.* at 370. While the appeal was pending, a related state court class action settlement was finalized. *Id.* at 370–71. The federal appellants had not opted out of the class, and the settlement explicitly released their federal claims that were on appeal before this court. *Id.* at 371–72. The Supreme Court later reversed our court for not applying the Full Faith and Credit

Act as a bar to further prosecution of the federal action. *Id.* at 373. The same principle applies here. As Moreno's federal case was pending appeal, the Los Angeles County Superior Court entered a final settlement order and judgment that bars his wage and hour claims.**[2]**

Our court must treat a state court judgment with the same respect it would receive in the courts of the rendering state. 28 U.S.C. § 1738. We apply California law to determine a judgment's preclusive effect. *See Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005). In California, claim preclusion applies when "(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding." *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles*, 24 Cal. Rptr. 3d 543, 557 (Ct. App. 2004).

All three elements of claim preclusion are satisfied here. On November 29, 2021, the California Superior Court entered an order granting final settlement approval in *Garcia-Muniz v. UtiliQuest, LLC*. *See* Order Granting Motion for Final Approval of Class Action Settlement, No. BC685160 (L.A. Super. Ct. Nov. 29, 2021). The judgment was entered on December 1, 2021. Final Judgment, *Garcia-Muniz v. UtiliQuest, LLC*, No. BC685160 (L.A. Super. Ct.

---

**[2]** Although preclusion is an affirmative defense, not a jurisdictional matter, we are nonetheless bound to recognize the preclusive effects of a state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). This affirmative defense was not—and could not have been—raised in district court, but we exercise our discretion to consider it for the first time on appeal. *See United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978).

Dec. 1, 2021).   Under California law, "[a] court-approved settlement" constitutes a final judgment on the merits, *Consumer Advoc. Grp., Inc. v. ExxonMobil Corp.*, 86 Cal. Rptr. 3d 39, 54 (Ct. App. 2008), but a judgment is not final "if an appeal is pending or could still be taken." *Riverside Cnty. Transport. Comm'n v. S. Cal. Gas Co.*, 268 Cal. Rptr. 3d 196, 208 (Ct. App. 2020); *see also Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*, 102 Cal. Rptr. 2d 770, 774 (Ct. App. 2000).

As part of the settlement agreement, the parties in *Garcia-Muniz v. UtiliQuest, LLC*, agreed to waive any appeals unless the California Superior Court entered an order that materially altered the settlement's terms.  The Superior Court subsequently entered a final judgment "in accordance with terms of the Settlement."  Final Judgment at 1, *Garcia-Muniz*, No. BC685160. Moreover, on January 30, 2022, the time to appeal California's judgment lapsed, and so the judgment is final and free from "direct attack."[3]  *People v. Burns*, 131 Cal. Rptr. 3d 121, 125 (Ct. App. 2011).  Moreno does not contest that the settlement releases cover his wage and hour claims.  Moreno also admits that he received notice of the class settlement and did not opt out within the timeframe.  Accordingly, there is a final judgment on the merits involving the same parties and same cause of action.  Moreno's wage and hour claims are precluded.

Moreno argues that he implicitly opted out of the state settlement by maintaining this federal litigation, and in the

---

[3] As an absent class member, Moreno must have formally intervened or filed a motion to vacate the judgment and been denied relief to have the right to appeal the Superior Court's judgment.  *Hernandez v. Restoration Hardware, Inc.*, 409 P.3d 281, 290 (Cal. 2018).  He did neither.  Nor has Moreno, after two rounds of supplemental briefing on this subject, expressed any intent to appeal the California settlement.

alternative, requests permission to file a late opt out. He raises these issues in the wrong court. A federal court's broad collateral review of a state court class action judgment would be inappropriate. *Hesse v. Sprint Corp.*, 598 F.3d 581, 587 (9th Cir. 2010). Our review is limited to determining "whether the procedures in the prior litigation afforded the party against whom the earlier judgment is asserted a 'full and fair opportunity' to litigate the claim or issue." *Id.* (quoting *Epstein v. MCA, Inc.*, 179 F.3d 641, 648–49 (9th Cir. 1999)). "Normally we will satisfy ourselves that the party received the requisite notice, opportunity to be heard, and adequate representation by referencing the state court's findings." *Id.* at 588. The Superior Court of California made specific findings that the notice given to class members comported with due process and that the settlement was fair, adequate, and reasonable. *See* Order Granting Motion for Final Approval of Class Action Settlement at 9–11, *Garcia-Muniz*, No. BC685160. Accordingly, the district court's dismissal of Moreno's wage and hour claims is affirmed.

## CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Moreno's complaint and action.

**AFFIRMED.**